MURDOCK v. MARKET & FULTON NAT. BANK.

(Supreme Court, Appellate Division, First Department. November 14, 1902.)

1. JUDGMENTS—OPENING—AGREEMENT—CONSTRUCTION.

One of the conditions of opening a default judgment was that defendant should deposit money with a bank, subject to the order of the attorneys of the parties; the deposit to be applied to any judgment plaintiff might recover on retrial, or be returned to defendant's attorney in the event of determination for defendant. The bank issued a certificate of deposit, but retained it in its possession. The action was retried, and the complaint dismissed. Subsequently an assignee of the plaintiff sued defendant, procuring an attachment, and serving notice thereof on the bank. *Held* that, if the bank had returned the money to defendant before service of the attachment, it was not liable.

2. ATTACHMENT—EVIDENCE—SUFFICIENCY.

Judgment in the attachment suit was had against the defendant therein, and this judgment, with rights against the bank, was assigned to one who brought action against the bank. The answer alleged that

the money had been paid out, and the plaintiff testified that the president of the bank had told him the fund was paid out. *Held,* that this was not sufficient proof of that fact to sustain a verdict for the bank.

O'Brien, J., dissenting.

Appeal from trial term, New York county.

Action by John Murdock against the Market & Fulton National Bank. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

E. H. Wilson, for appellant.

J. S. Durand, for respondent.

PATTERSON, J.   This is an appeal from a judgment dismissing the complaint at trial term at the close of plaintiff's proof.   It would appear that in February, 1899, one Chambers had a claim against Feron & Ballou Company of Illinois, and an action was brought on that claim, to which a defense was interposed.   The cause was put upon the calendar, and came on for trial, and the plaintiff obtained judgment by default.   Execution was issued, and property belonging to the defendant in the city of New York was levied upon.   The default was opened by stipulation between the attorneys for the parties to that action, and bears date the 2d of February, 1899; one of the conditions being that the amount of the judgment, namely, $1,233.35, should be deposited in this defendant bank; such deposit to be subject to the joint order of the attorneys for the plaintiff and defendant, and "in the event that upon the retrial or other determination of this action, to be evidenced by the production of a judgment or an order of discontinuance, such special deposit is to be applied in satisfaction of any verdict or judgment the plaintiff may recover, or be returned to the defendant's attorney in the event of a dismissal or other determination for the defendant."   That deposit was made after a conference between the attorneys and officers of the defendant bank.   A certificate of deposit was drawn, certifying that Feron & Ballou Company had deposited in the bank $1,233.35, payable to the order of Thomas D. Rambout and Hartley G. Pelletier on the return of the certificate properly indorsed.   That certificate never was issued or delivered by the bank, but remained in its possession, and was produced by it on the trial of this action.   Some four weeks after this arrangement of deposit was made, the Chambers suit was retried, and the complaint was dismissed, with costs, and judgment was entered.   It would seem that no appeal was ever taken from this judgment.   On the 18th of April, 1899, one Sloan brought an action, as the assignee of Chambers, against Feron & Ballou Company, for $1,000, and procured an attachment against Feron & Ballou Company, and caused notice of the attachment to be served on the defendant bank, and a deputy sheriff made a demand for a certificate of any funds they had belonging to Feron & Ballou Company.   A certificate was given to the effect that the bank held no money of the Feron & Ballou Company in its possession.   In November, 1899, judgment was recovered in the Sloan action for $1,512.99, and execution was issued.   Under that execution were sold the right, title,

and interest of the Feron & Ballou Company to the moneys claimed to have been deposited with the defendant in this action under the stipulation of the 2d of February, 1899, and any and all moneys of the judgment debtor on deposit in the defendant bank.   On January 9, 1902, the judgment against the Feron & Ballou Company was assigned to Chambers; and on January 14, 1902, Chambers assigned it to this plaintiff, with all the right, title, and interest which Chambers had to the money claimed to have been on deposit in the defendant bank on the 18th of April, 1899.

The stipulation between the attorneys contemplated two events,— one in which money on deposit should be paid over to or for the benefit of the plaintiff, and the other in which it should go back to the depositor.   The stipulation was lodged with the bank.   The cashier or president of the bank suggested the form of a deposit slip, which was not delivered to either of the parties.   The essentials of the contract made are contained in the stipulation.   The contract was between the defendant bank and the depositors of the money, namely, Feron & Ballou Company.   There can be no escape from the conclusion that if, upon a retrial of the Chambers action, the judgment should not be maintained, and the plaintiff should not recover therein, the money on deposit only as security for a recovery should be returned to the defendants in that action.   It was their money. It was lodged with the bank, not as general security for any claim Chambers might have against Feron & Ballou Company, but upon the specific understanding that it should be returned to the depositor if the plaintiff, Chambers, did not succeed on a retrial of his case. If the bank actually paid out the money before the attachment in the Sloan action was levied, it did nothing more than return the money to the depositor, who, under the terms of the stipulation, was entitled to it.   But the difficulty with the case as it now stands is that there is no proof that the defendant bank actually paid out the money before that attachment was levied.   All that there is in the record upon the subject of the payment of the money by the bank is purely hearsay.   The attorney for the defendant in this action seems to have acted upon the assumption that it was paid out, but the proof does not show it.   The answer alleges that it was paid out, but the defendant has not proved it.   Mr. Rambaut, one of the witnesses for the plaintiff, testifies that the president of the bank told him that the fund had been paid out, but the president's unsworn statement does not prove it.   From all that appears in this record, the money may have been in the bank at the time the attachment was issued in the Sloan action.

For the want of necessary proof upon this subject, the judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event.   All concur, except O'BRIEN, J., who dissents.

O'BRIEN, J. (dissenting).   A new trial, upon this record, seems to me unnecessary and unwarranted.   The reversal is based upon want of proof upon the subject of the payment by the bank of the money deposited with it to one of the depositors; it being said that, "from all that appears in this record, the money may have been in the bank

at the time the attachment was issued in the Sloan action." The answer however, averred payment by the bank, and this averment was not disputed upon the trial, which proceeded upon the theory that the money had been paid by the bank, but it was insisted that the same was paid out improperly. Thus, Mr. Rambaut, who, with Mr. Pelletier, deposited the money, testified that he saw the president at the time the sheriff was making the levy, and was told by him that it had all been paid out, and that he wrote to the bank a letter of remonstrance, in which he said he had learned that the bank claimed to have paid out the entire fund on March 2d, which payment was unwarranted. So, too, the assistant deputy sheriff testified that he was told, upon attempting to make the levy at the bank, that there was no money there, and was given a certificate saying, "This is to certify that the bank holds no money of the defendant in its possession." And it appears that the deposit slip left with the bank, which also was introduced in evidence, bears upon its face the signature of Mr. Pelletier, and is stamped "Paid." Much of this testimony was hearsay, but it was received without objection, and, though slight, has some probative force, particularly as no counter testimony was offered to rebut it. This evidence, we think, supported the allegation of payment by the bank, in view of the fact there was no serious question made about the fact of payment; the contention of the plaintiff being, as said, that unwarranted payment was made.

I dissent, therefore, and think that the judgment should be affirmed.